General Mills, Inc. *v.* Snavely, Appellant.

Argued March 19, 1964. Before Rhodes, P. J., Ervin, Wright, Woodside, Watkins, Montgomery, and Flood, JJ.

*Mark R. Eaby, Jr.*, with him *Eaby and Eaby*, for appellant.

*John T. Barber*, with him *Barley, Snyder, Cooper & Mueller*, for appellee.

Opinion by Wright, J., April 14, 1964:

In this assumpsit action the court below entered judgment on the pleadings in favor of the plaintiff, General Mills, Inc., and against the defendant, L. M. Snavely. The latter has appealed. It will be necessary to set forth the procedural situation in some detail.

In its complaint, General Mills sought to recover on a book account for poultry feed sold and delivered to Snavely. The exhibit attached to the complaint contains entries of debits and credits from May 31, 1961 to July 17, 1962, and shows a balance due of $3,323.72. Snavely filed an answer containing new matter and

two alternative counterclaims. The new matter alleged was that, on May 25, 1962, the parties had executed a mutual release.[1] The first counterclaim alleged that, excluding items prior to the date of the release, the book account showed a balance due Snavely of $388.99. The alternative counterclaim alleged that, disregarding the release, the feed was not as warranted; and that, due to its inferior quality, Snavely was required to feed seven thousand capons for twenty instead of fifteen weeks, during which additional period the mar-.

---

[1] "KNOW ALL MEN BY THESE PRESENTS: That L. M. Snavely, R.D. No. 1, Lititz, Pennsylvania for and in consideration of the sum of four hundred twenty and no/100 $420.00 to its duly authorized representatives in hand paid by General Mills, Inc., a Delaware corporation, having its executive office at 9200 Wayzats Boulevard, Minneapolis 26, Minnesota, the receipt whereof is hereby acknowledged, do hereby release and forever discharge General Mills, Inc., (this release being mutual and reciprocal as to each party, including their respective agents, servants, employees, officers, stockholders, successors or assigns) from any and all claims, causes of action, rights of action, and demands of every kind and nature whatsoever, whether known at the time of making this release or unknown, including specifically all damages, loss expense, and charges resulting from or in any manner pertaining to the purchase delivery and use of feedstuffs which were delivered and fed to livestock or poultry owned by L. M. Snavely or for the period commencing October 1, 1961 to the date of this release. It is the intention of the parties to release any and all claims that L. M. Snavely may have against General Mills, Inc., arising directly or indirectly from the business transactions carried on between the parties hereto from the beginning of time to the date of these. presents.

"The parties hereto agree that the payment of this sum is not to be construed as an admission of any liability whatever by or on behalf of the above named parties on account of the circumstances recited herein.

"All agreements and understandings between the parties hereto are embodied and expressed herein, the sum recited herein is accepted as a compromise and settlement of all claims on account of the feed shipments and use thereof referred to above, and the terms of this release are contractual and not mere recitals".

ket dropped ten cents a pound causing a loss of $4,-900.00 in sales price, plus $2,500.00 for extra feed, total claim $7,400.00. General Mills then filed preliminary objections in the nature of a demurrer to the new matter and a motion for judgment on the pleadings, asserting (1) that the release in question discharged only its liability to Snavely; (2) that the general denials in the answer constituted admissions under the provisions of Pa. R. C. P. No. 1029; and (3) that both causes of action pleaded by Snavely were barred by the release.

We will first consider the sufficiency of Snavely's denials in the affidavit of defense.[2] The position of General Mills in its preliminary objections was that Snavely's counterclaims manifested knowledge or information sufficient for him to form a belief as to the truth of the averments in the complaint, wherefore his denials did not come within the purview of subsection (c) of Pa. R. C. P. No. 1029, and consequently must be given effect as admissions under subsection (b) of said rule. The court below reasoned that, while alternative pleadings are permitted under Pa. R. C. P. No. 1020(c), a pleading containing inconsistent averments must have the special verification required by Pa.

_____

[2] "3. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 3 of the Complaint and the allegations in said paragraph do not show the entire transactions between the parties hereof and all means of proof thereof are in the exclusive control of the Plaintiff and the said allegations are, therefore, denied. Defendant demands proof thereof at the trial of this case.

"4. Defendant, after reasonable investigation, is without knowledge or information sufficient to form a belief as to the allegations of paragraph 4 of the Complaint and, therefore demands proof thereof at the trial of this case.

"5. It is admitted that the Plaintiff has made demand on the Defendant for the sum claimed to be due, and the Defendant has failed and refused to pay the same or any part thereof. It is denied that there is due to the Plaintiff by the Defendant any sum whatsoever".

R. C. P. No. 1024(b), and therefore Snavely's answer "in the formal language of Rule No. 1029(c), is not sufficient". We are not in accord with this reasoning.

Although the answer, new matter and counterclaim were not drawn with particular nicety, we are impelled to heed the admonition in Pa. R. C. P. No. 126, as follows: "The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties". Courts should not be astute in enforcing technicalities to defeat apparently meritorious claims: *West Penn Sand & Gravel Co. v. Shippingport Sand Co.*, 367 Pa. 218, 80 A. 2d 84. The procedural rules are not ends in themselves, but means whereby justice, as expressed in legal principles, is administered; they are not to be exalted to the status of substantive objectives: *Esso Standard Oil Co. v. Taylor*, 399 Pa. 324, 159 A. 2d 692. It should be noted that General Mills did not question the propriety of the verification. This defect was first noticed and raised by the court below in its opinion. Under Pa. R. C. P. No. 1032, a party waives all defenses and objections which are not presented either by preliminary objection, answer or reply.

We come next to a consideration of the release. The court below took the position "that the consideration in the release is moving from the plaintiff to the defendant and that there is no recital of any consideration moving to the plaintiff from the defendant". However, we are not persuaded that, as to General Mills, there was a lack of consideration for the release. Consideration is defined as a benefit to the party promising, or a loss or detriment to the party to whom the promise is made: *Stelmack v. Glen Alden Coal Co.*, 339 Pa. 410, 14 A. 2d 127; *Hillcrest Foundation, Inc. v.*

*McFeaters,* 332 Pa. 497, 2 A. 2d 775; *Esakovich v. Groudine,* 141 Pa. Superior Ct. 365, 14 A. 2d 850. A promise to forbear from prosecuting a claim is sufficient consideration, *York Metal & Alloys Co. v. Cyclops Steel Co.,* 280 Pa. 585, 124 A. 752, as also is the compromise of a claim: *Thrasher v. Rothrock,* 377 Pa. 562, 105 A. 2d 600. And see *Gaynor v. Quinn,* 212 Pa. 362, 61 A. 944. Essentially this is what happened in the case at bar. According to the book account General Mills had a claim, on May 25, 1962, in the amount of $3,714.49. Snavely as of that date asserted a loss of $7,400.00. It is readily apparent that the payment of $420.00 by General Mills was a compromise of these opposing claims. In consideration of this payment, both General Mills and Snavely executed a release which was expressly declared to be mutual and reciprocal as to each.

The record and briefs indicate that the release in question was prepared by General Mills. Doubtful language in a written instrument is to be construed against the party who drew it: *Home Builders of Mercer County v. Dellwood Corp.,* 379 Pa. 255, 108 A. 2d 731; *Alcorn Combustion Co. v. Kellogg Co.,* 311 Pa. 270, 166 A. 862. The intention of the parties is to be garnered from a reading of the entire writing: *Minnotte Appeal,* 411 Pa. 492, 192 A. 2d 394. Each and every part thereof must be taken into consideration and given effect, if possible: *Cerceo v. DeMarco,* 391 Pa. 157, 137 A. 2d 296; *United Refining Co. v. Jenkins,* 410 Pa. 126, 189 A. 2d 574. The language used must be given its ordinary meaning unless circumstances show that a different meaning is applicable: *D'Orazio v. Masciantonio,* 345 Pa. 428, 29 A. 2d 43. The court will adopt the interpretation which, under all the circumstances of the case, ascribes the most reasonable, probable and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished:

*Unit Vending Corp. v. Lacas,* 410 Pa. 614, 190 A. 2d 298. And see *Consolidated Tile & Slate Co. v. Fox,* 410 Pa. 336, 189 A. 2d 228.

The case at bar presents for consideration a rather ineptly prepared instrument. In fact, General Mills concedes that the release was drawn with "inexpertise". There is no question that, on the date the release was executed, Snavely was indebted in the amount of $3,714.49. Nonetheless, General Mills paid him the sum of $420.00. As pertinently stated in Snavely's brief: "If it were not the intent of the parties for the appellee to release the appellant, then the appellee most certainly would have credited the account with this amount". For General Mills to pay Snavely the sum of $420.00, when he was allegedly indebted to it in a far greater amount, is contrary to logic and common sense. If the release was intended to be merely unilateral, there would have been no need for General Mills to sign it.

A release ordinarily covers such matters as may be said fairly to have been within the contemplation of the parties when it was given: *Cockcroft v. Metropolitan Liability Ins. Co.,* 125 Pa. Superior Ct. 293, 189 A. 687; *Bell Telephone Co. v. B. & O. R.R. Co.,* 155 Pa. Superior Ct. 286, 38 A. 2d 732; *Zurich General Accident & Life Ins. Co. v. Klein,* 181 Pa. Superior Ct. 48, 121 A. 2d 893. It cannot be justly argued that the parties did not have their respective claims in mind on May 25, 1962. Furthermore, as previously indicated, we cannot overlook the express statement in the instrument that it was to be "mutual and reciprocal as to each party". No word in a contract is to be treated as surplusage or redundant if any reasonable meaning consistent with the other parts can be given to it: *Morris v. American Liability & Surety Co.,* 322 Pa. 91, 185 A. 201. We have concluded as a matter of law that the release was intended to be mutual, and effectively can-

celed all obligations of each party up to the date of its execution. Cf. *Filler Products v. Corriere,* 381 Pa. 394, 113 A. 2d 219; *Wathen v. Brown,* 200 Pa. Superior Ct. 620, 189 A. 2d 900.

Since we have decided that the release was a valid instrument binding both parties as to transactions between them prior to the date of its execution, Snavely's second counterclaim is clearly barred. Indeed, the opinion below states that this was conceded by Snavely's counsel at the time of argument. However, the book account reveals transactions between the parties subsequent to the date of the release, which indicate a balance in Snavely's favor. This balance was the basis of his first counterclaim, which remains to be adjudicated.

Judgment reversed, and the record is remanded to the court below for further proceedings consistent with this opinion.