Gregory TENOS

v.

**STATE FARM INSURANCE CO., Appellant.**

**Gregory TENOS, Appellant,**

v.

**STATE FARM INSURANCE CO.**

Superior Court of Pennsylvania.

Argued Jan. 29, 1998.

Filed July 17, 1998.

Reargument Denied Sept. 22, 1998.

---

Daniel M. Taylor, Pittsburgh, for State Farm Insurance Co.

Mariann E. Luksik-Jarvis, Pittsburgh, for Gregory Tenos.

Before DEL SOLE, HUDOCK and ORIE MELVIN, JJ.

ORIE MELVIN, Judge:

This case involves cross-appeals from the March 8, 1995 order of the Court of Common Pleas of Butler County entering summary judgment against State Farm Insurance Company (State Farm) on the question of coverage under their homeowner's policy, and also denying Gregory Tenos' (Tenos) Motion for Leave to Amend his Complaint to add a count under the Unfair Trade Practices and Consumer Protection Act (UTPC-PA). We reverse the grant of summary judgment and remand for entry of summary judgment in favor of State Farm and otherwise affirm the denial of leave to amend.

The relevant facts and procedural background of these cross-appeals are as follows. This action arises from State Farm's denial of a claim made by Tenos under his contract of homeowner's insurance with State Farm. In January of 1991, Tenos' rural residence was burglarized. Among other items, two all-terrain vehicles (ATVs) were stolen. Tenos submitted a claim for the value of the ATVs which State Farm denied on the basis that his policy did not cover the ATVs, as they were not used "solely for the service of the insured location."

Tenos filed suit and the matter was submitted to Compulsory Arbitration. 42 Pa. C.S.A. § 7361. A board of arbitrators entered an award in favor of Tenos. State Farm then appealed to Common Pleas Court for a trial *de novo* as permitted by § 7361(d) *supra*. Tenos next filed a Motion for Leave to Amend seeking to add a claim for damages under the Pennsylvania UTPCPA. Additionally, each party filed a motion for summary judgment. The trial court granted summary judgment in favor of Tenos on the issue of liability only and denied Tenos' motion to amend. Upon State Farm's admission of the ATVs value, a judgment of $ 7,552.86 was subsequently entered against State Farm. These cross-appeals followed.

On appeal the parties raise the following issues for our review:

> WHETHER THE TRIAL COURT INCORRECTLY HELD THAT TENOS'S [SIC] ATVS WERE USED 'SOLELY FOR THE SERVICE OF THE INSURED LOCATION' AND WERE COVERED UNDER THE POLICY, DESPITE TENOS'S [SIC] ADMISSION THAT THE ATVS WERE USED FOR RECREATIONAL PURPOSES?

(State Farm's Brief at 5).

> [WHETHER] THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED TENOS' MOTION TO AMEND COMPLAINT TO INCLUDE A CLAIM UNDER THE UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW, WHICH CLAIM WAS WITHIN THE STATUTE OF LIMITATIONS?

(Tenos' Brief at 6).

As to the first issue, we note that when reviewing orders granting summary judg-

ment, our scope of review is plenary. *State Farm Mutual Auto. Ins. Co. v. Universal Underwriters Ins. Co.*, 549 Pa. 518, 701 A.2d 1330 (1997). This Court has previously summarized the appropriate standard as follows:

> First, the pleadings, depositions, answers to interrogatories, admissions on file, together with any affidavits, must demonstrate that there exists no genuine issue of fact. Second, the moving party must be entitled to judgment as a matter of law. The moving party has the burden of proving that no genuine issue of material fact exists. However, the non-moving party may not rest upon averments contained in its pleadings; the non-moving party must demonstrate that there is a genuine issue for trial. The court must examine the record in the light most favorable to the non-moving party and resolve all doubts against the moving party. Finally, an entry of summary judgment is granted only in cases where the right is clear and free of doubt. We reverse an entry of summary judgment when the trial court commits an error of law or abuses its discretion.

*Janson v. Cozen and O'Connor*, 450 Pa.Super. 415, 676 A.2d 242, 246 (1996) *quoting Blackman v. Federal Realty Inv. Trust*, 444 Pa.Super. 411, 664 A.2d 139, 141–42 (1995). Moreover, the question of whether a claim is within a policy's coverage or barred by an exclusion is a question of law that may be decided by a motion for summary judgment. *Lebanon Coach Co. v. Carolina Casualty Ins. Co.*, 450 Pa.Super. 1, 675 A.2d 279 (1996). In reviewing such a determination "we are not bound by the trial court's conclusions of law, but may draw our own inferences and reach our own conclusions." *Id.* 675 A.2d at 283. With these principles in mind, we consider the propriety of the trial court granting summary judgment.

The first issue requires our examination of whether the trial court was correct in determining that Tenos' ATVs were covered under his homeowner's insurance policy. We begin our analysis by examining the provision of the policy pertinent to this appeal.

COVERAGE B – PERSONAL PROPERTY

. . . .

2. Property Not Covered. We do not cover:

. . . .

> c. any engine or motor propelled vehicle or machine, including the parts, designed for movement on land. We do cover those **used solely for the service of the insured location** and not licensed for use on public highways; (emphasis added)

State Farm Homeowner's Policy (Special Form 3) Exhibit A attached to Complaint.

State Farm asserts that the language of the policy is clear and unambiguous. State Farm contends that ATVs are motor propelled vehicles designed for movement on land and thus are not covered unless "used solely for the service of the insured location." As part of the investigation of Tenos' claim, State Farm took a recorded statement from Tenos wherein he admitted that he used the ATVs primarily for recreational purposes and some work around the premises.[1] Consequently, State Farm argues that Tenos' admitted use falls outside the limited service exception. Tenos counters by pointing out that since State Farm does not define the phrase, it is inherently ambiguous, and therefore the trial court correctly construed the language of the policy in favor of coverage. Tenos further asserts that the phrase in question is broad enough to include recreational use on the premises within the meaning of service. The trial court accepted Tenos' argument and held that the phrase was ambiguous and that a reasonable interpretation could include recreational use on the insured property.

■ We are guided by the following principles in deciding this issue:

> When interpreting an insurance contract, words that are clear and unambiguous must be given their plain and ordinary

---

1. In his Reply to New Matter Tenos admits to the authenticity of the recorded statement and the statements made therein.

meaning. Where ambiguities are found, they must be construed in the light most favorable to the insured. However, 'a contract is not rendered ambiguous by the mere fact that the parties do not agree upon the proper construction.' An ambiguity exists only when a policy provision is reasonably susceptible of more than one meaning. 'Courts should read policy provisions to avoid ambiguities, if possible, and not torture language to create them.' (citations omitted).

*Ryan Homes, Inc. v. Home Indemnity Co.*, 436 Pa.Super. 342, 647 A.2d 939, 941 (1994). Our research has failed to uncover any Pennsylvania appellate cases interpreting the meaning of the provision in question. However, State Farm cites to several cases from other jurisdictions that have had the occasion to review the same or a very similar provision.

In *Wilhite v. State Farm Fire and Casualty Ins. Co.*, 541 So.2d 22 (Ala.Civ.App.1989), the Alabama Court of Civil Appeals reviewed the exact same provision and held that a stolen Suzuki 4–wheel off-road recreational vehicle was properly excluded from coverage by Section 2(c). The court found the language to be "plain and unambiguous" and that "the exclusion clause could not be more straightforward and explicit." *Id.* at 23. However, the argument presented was different from the instant case. In *Wilhite*, the insured argued that since his Suzuki ATV was not defined as a motor vehicle pursuant to the definitional sections of the policy, it could not be excluded by the language of Section 2(c) which precluded coverage for theft of "any engine or motor propelled vehicle." Hence, *Wilhite* does not present specific guidance.

In *Watamura v. State Farm Fire and Casualty Co.*, 206 Cal.App.3d 369, 253 Cal. Rptr. 555 (1988), again reviewing the same provision, the California Court of Appeals also found that the loss of a "sandrail" (dune buggy) was "excluded by the clear and unambiguous terms of the policy." *Id.*, 206 Cal. App.3d at 371, 253 Cal.Rptr. at 556. Again the insured attempted to create an ambiguity by referring to the definitional section which stated that "motor vehicle" means "a motor-

ized land vehicle designed for travel on public roads or subject to motor vehicle registration." The insured argued that whether his sandrail was in dead storage was a question of fact, and the definition of motor vehicle rendered the exclusionary clause ambiguous. In rejecting these arguments, the *Watamura* court opined: "[t]here was no ambiguity in this provision. The sandrail was an engine or motor propelled vehicle designed for movement on land, and was therefore excluded." *Id.* Although dicta, the *Watamura* court also expressly found that a sandrail "did not fall within the exception for vehicles 'used solely for the service of the insured location' such as a tractor-mower." *Id.* Implicit in this holding is the court's understanding that the limited exception to the exclusion requires the motor propelled vehicle to serve the land.

Similarly, in *Fontenot v. Louisiana Farm Bureau Mutual Ins. Co.*, 535 So.2d 552 (La. App.1988), the Louisiana Court of Appeals found that a stolen three-wheel motorcycle was not covered under a homeowner's policy that excluded losses to "motorized vehicles, except such vehicles *pertaining to the service of the premises*." *Id.* at 553 (emphasis added). Interestingly, even the parties agreed, as evidenced by their stipulation, that this three-wheeled bike was not a vehicle which "pertained to the service of the premises." *See also D'Arrigo v. Aetna Casualty and Surety Co.*, 115 A.D.2d 345, 495 N.Y.S.2d 818 (App.Div.1985) (no coverage when motorcycle not used to service insured's residence regardless of whether it is being held in dead storage).

Obviously, none of the above-referenced cases specifically address whether recreational use is contemplated by the phrase "solely used for the service of the insured location." Consequently, we do not rely upon them in reaching our decision. Nonetheless, we believe the underlying assumption in all is that the common usage of "service", in this context, contemplates some sort of maintenance or repair to the premises. In fact, the plain, ordinary and everyday meaning of the term "service" simply does not conjure thoughts of recreation. Webster's Ninth New Collegiate Dictionary provides no

definition that equates service with recreational activities. Rather, the verb "service" is defined as "to repair or provide maintenance for." When someone takes a vehicle in for service, it is commonly understood that some maintenance or repairs will be performed on the vehicle; and they are not taking it for some joyride around the block. We cannot rewrite a contract or give it a construction that conflicts with the plain, ordinary and accepted meaning of the words used. *Volunteer Firemen's Ins. Serv., Inc. v. CIGNA Property and Cas. Ins. Agency*, 693 A.2d 1330 (Pa.Super.1997).

The only case cited by either party that reaches a different conclusion and which specifically addressed the precise issue is *Strand v. State Farm Ins. Co.*, 34 Ohio App.3d 97, 517 N.E.2d 265 (1986). In *Strand*, a three-wheel ATV was stolen and the court concluded that the phrase "used solely for the service of the insured location" to be ambiguous and "subject to a broader interpretation than suggested by [State Farm]." *Id.* 517 N.E.2d at 267. In reaching this conclusion, the *Strand* court stated:

> While [State Farm] could have simply said, '[w]e cover motor propelled vehicles used solely to service the insured location', thereby suggesting physical proximity to the land or premises itself was the test (as would be the case with lawnmowers, rototillers or snowblowers), it did not use those words. Instead, it shows a broader formulation—'for the service of the insured location'—thereby suggesting the test is some purpose or goal for which some act is undertaken by a motor-propelled vehicle to aid the broadly defined term of 'insured location'.

*Id.* at 268. (footnote omitted). The court further stated: "we are not convinced that any pleasure obtained by riding this motorbike somehow deprives its rider of any purpose of serving the insured location." *Id.* Naturally, Tenos advocates that we accept the reasoning of the *Strand* court. For the reasons that follow, we decline to do so.

The *Strand* court focused upon the broad definition the policy gives to the term "insured location" and leaps to the conclusion that a correspondingly broad definition must also be given to the term "service" which would include recreational use of an ATV on the land. However, the *Strand* court never specifically addresses how service equates with recreational use. The *Strand* court presents a myopic view of the issue and believes that as long as any use of the ATV is for servicing the land then all use is permitted. The first problem with this rationale is that the *Strand* court accepts the fact that an ATV can be put to dual uses and simply ignores the limiting effect of the word "solely". Such an interpretation negates the inclusion of the word "solely". Secondly, the *Strand* court tries to draw a distinction between the phrase **"to service** the insured location" and **"for the service of** the insured location." This is a distinction without a difference and as such cannot serve as a basis for a broader interpretation. We find the *Strand* court's focus is misplaced, and its reasoning strained and unpersuasive.

■ *Strand* states the test as requiring "some purpose or goal for which some act is undertaken by a motor-propelled vehicle to aid the broadly defined term of 'insured location'." *Id.* at 268. Even if we applied this test it would not change our conclusion. When someone drives an ATV across his or her property to pick up debris or inspect for damage, it can reasonably be said to service the land. However, when using an ATV for the thrill of driving over rugged terrain, the only service being performed is the fulfillment of the driver's recreational desires. This purpose or goal in no way "aids the insured location." The provision in question does not say, "we cover unlicensed motor propelled vehicles used solely for the service of the **insured**." Nor does it say, "we cover unlicensed motor propelled vehicles used solely **on the insured location**." The adverb "solely" serves to modify the verb "used." Thus in order to be covered, the ATVs must be used exclusively "for the service of the insured location." The acreage of the land or whether the ATVs are used exclusively on the insured land are irrelevant. Instantly, Tenos admits that he used the ATVs primarily for recreation and only occasionally performed odd jobs with one of them. Since we find no ambiguity and these

ATVs were admittedly used for more than just service of or to the land, the trial court committed an error of law in determining that recreational use fit within this limited exception to exclusion.

Tenos further contends that the word "solely" was only intended to disqualify vehicles like a truck or a car which are not exclusively used on the insured location. This argument has no merit, such vehicles are already excluded by the phrase "not licensed for use on public highways." Section 2(c) State Farm Homeowner's Policy, *supra.* To construe this provision as Tenos suggests would render the inclusion of the word "service" superfluous. Our rules of construction do not permit "word[s] in a contract to be treated as surplusage ... if any reasonable meaning consistent with the other parts can be given to it." *General Mills, Inc. v. Snavely,* 203 Pa.Super. 162, 199 A.2d 540, 544 (1964). Tenos would have us construe "service of the insured location" to include any recreational type activities performed on one's land using an unlicensed motor propelled vehicle. If we were to accept Tenos' view, then we would also have to find coverage for dirt bikes, go-carts and any other imaginable unlicensed motor propelled vehicle. We refuse to adopt such an untenable interpretation.

■ Turning now to the propriety of the trial court's denial of Tenos' Motion to Amend, we have reviewed the proposed amendment and find that it adds only two (2) new averments, which state:

10. Plaintiff's property insured under the aforementioned policy is residential property used only by Plaintiff and his family for residential and noncommercial purposes. As such, the insurance contract by and between Plaintiff and Defendant is a 'consumer contract' within the meaning of the Pennsylvania Unfair Trade Practices and Consumer Protection Act. (citation omitted).

11. As a consumer contract, Plaintiff had no bargaining power to negotiate the terms of the contract, which at best require [sic] Defendant to provide coverage and at worst is ambiguous and misleading in its terms. Defendant's refusal to provide coverage, as set forth herein, constitutes 'bad faith.'

We find such averments do not sufficiently raise a claim under either the UTPCPA or the Pennsylvania Bad Faith Statute, 42 Pa. C.S.A. § 8371.

In *Romano v. Nationwide Mutual Fire Ins. Co.,* 435 Pa.Super. 545, 646 A.2d 1228 (1994), this Court defined the term "bad faith" in the insurance context to mean:

'Bad faith' on the part of [an] insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Id.* 646 A.2d at 1232. Tenos' proposed amendment makes no allegation of a dishonest purpose or ill will on the part of State Farm. Rather, he only alleges that the policy is ambiguous; such allegation does not equate with a dishonest purpose. Even if it did, as previously discussed we have already determined that the policy provision in question was not ambiguous. Hence, there can be no bad faith.

Similarly, in order to state a claim under the UTPCPA specific averments of fraud must be raised. Tenos' proposed amendment is again lacking in this respect. Moreover, as stated by this Court in *Gordon v. Pennsylvania Blue Shield,* 378 Pa.Super. 256, 548 A.2d 600 (1988), "[t]he test used to determine if there exists a cause of action in tort growing out of a breach of contract is whether there was an improper performance of a contracted obligation (misfeasance) rather that the mere failure to perform (nonfeasance)". *Id.* 548 A.2d at 604. Instantly, Tenos only alleges nonfeasance. *See Gordon, supra* (nonfeasance alone is not sufficient to raise a claim pursuant to the UTPCPA).

Therefore, we reverse the order granting summary judgment in favor of Tenos and remand to the trial court for entry of sum-

mary judgment in favor of State Farm, and affirm the denial of Tenos' motion to amend.

Order reversed in part and affirmed in part, and the record remanded for entry of summary judgment in favor of State Farm. Jurisdiction relinquished.

DEL SOLE, J., filed a Dissenting Opinion.

DEL SOLE, Judge, dissenting:

I dissent. The question presented to this court is whether the all-terrain vehicles owned by the insured and stolen from his property were "used solely for the service of the insured location" [1] and therefore covered under the insured's homeowner's policy. The record establishes that the insured location was a 75–acre tract of land. In addition, the record substantiates that the ATVs were used for basic work, recreation and travelling on the property. The majority is correct in noting the lack of Pennsylvania appellate cases which interpret the meaning of the provision in question. Unfortunately, in reaching its determination, the majority analyzes and correctly concludes that four cases from other jurisdictions are inapposite while declining to accept the reasoning in *Strand v. State Farm Ins. Co.*, 34 Ohio App.3d 97, 517 N.E.2d 265 (1986), the only case in the country which is exactly on point and addresses the identical policy language and factual scenario before us.

In *Strand*, an ATV was stolen and the court determined the term "used solely for the service of the insured location" to be ambiguous and subject to broad interpretation. That court concluded that the use of the ATV on three acres for both maintenance and recreation was within the policy language. However, the majority of this court finds the policy language unambiguous and concludes that non-maintenance-related activities remove the ATVs from coverage.

I agree with the *Strand* court in its result. I do not agree with the majority that in the language "used solely for the service of the insured location" the term "service" limits the ATV use to maintenance. There is no rationale for finding that "service," in refer-

ence to a 75–acre tract of land, is limited to maintenance, and the majority fails to conclusively argue this point. Rather, the majority, relying upon Webster's Ninth New Collegiate Dictionary to define the word "service" mistakenly states that "service" is a verb. In this provision of the policy, "service" is not a verb, it is a noun. In Webster's New Universal Unabridged Dictionary the noun "service" has twenty-six different definitions while the verb "service" has four definitions. This itself should be sufficient to convince this court to follow the *Strand* court and find the language in question to be ambiguous and subject to broad interpretation.

However, the majority suggests that "the *Strand* court presents a myopic view of the issue." Myopic is defined in Webster's Ninth New Collegiate Dictionary as "a narrow view of something." By incorrectly defining and restricting the word "service" to exclude all meanings but maintenance, I suggest the majority's interpretation of the exclusion is a "narrow view." In my reading of the policy, I consider the "service" provided by the motor vehicles in question to be similar to the common usage of the word "service" in reference to other motor vehicles. For example, the statement that a particular location "has bus service" means that buses provide transportation in that location. Likewise, a taxi used for the "service" of a certain area refers to transportation access via a taxi in that area. Consequently, "service" is used to denote the existence of transportation and we should not limit the word to maintenance.

Additionally, the purpose of the word "solely" is to limit the vehicle's use on the "insured location," not the type of use required of the vehicle. Therefore, "solely" limits where the service is performed, not what service is performed. Interestingly, State Farm never argues that the nature of the use of the vehicle on the insured location, either recreation or maintenance, increases its responsibility for risk of loss in this theft policy. I believe a vehicle, in service of its owner's insured location, performs that function by transporting the owner or others, as long as it is done on the premises.

---

1. Throughout its opinion, the majority alters the language of the policy provision in an effort to

support its argument, thus ignoring the rule that we cannot rewrite a contract.

It is axiomatic that contracts are interpreted against the drafter, in this case, State Farm. Had the insurer desired to limit the service of motor propelled vehicles insured for theft purposes to those only engaged in maintenance, rather than all other use on an insured location, it could have unequivocally done so. We should not do it for them.

Service does not equal maintenance, and location does not equal land. Consequently, "service of the insured location" is not limited to maintenance of the land. I would find the term "service" includes recreational activities on the insured property and, as a result, the terms of the policy should be applied in favor of the insured.

Finally, I disagree with the majority conclusion that the trial court properly denied the insured's motion to amend the complaint. It is well settled in Pennsylvania that, under Pennsylvania Rule of Civil Procedure 1033, amendments to pleadings will be liberally allowed to secure the determination of cases on their merits. *Capobianchi v. BIC Corp.*, 446 Pa.Super. 130, 666 A.2d 344 (1995). However, an amendment should not be allowed where there is an error of law or resulting prejudice to an adverse party. *Werner v. Zazyczny*, 545 Pa. 570, 681 A.2d 1331 (1996). Neither is present in this case.

Instead, the insured presented in the amended complaint a proper allegation of bad faith. Consequently, the trial court abused its discretion in disallowing the amendment. This is amplified by the fact that the statute of limitations under the Pennsylvania Unfair Trade Practices and Consumer Protection Law is six years. *Gabriel v. O'Hara*, 368 Pa.Super. 383, 534 A.2d 488 (1987). The record shows that the theft occurred in January 1991. The original complaint was filed in April 1992; the motion to amend was filed in December 1994, less than four years from the original loss, and two and one half years from the original complaint. Thus, the amendment was within the statute of limitations.

Moreover, the facts support a bad faith claim. State Farm's refusal to pay is not supported by any caselaw. As the majority explains, there is only one case in the nation which addresses this issue and that case supports the insured's interpretation of the clause. *Strand* was decided in 1986 and State Farm, a party in the case, was aware of the outcome. However, State Farm had chosen not to change this provision of the policy since the *Strand* ruling. Obviously, since that time, the policy language and its meaning under *Strand* have been satisfactory to State Farm. Therefore, its choice to now ignore the *Strand* determination and not pay under the policy supports a claim of bad faith and I would allow the amendment.