

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-14-2003

# Berg Chilling Sys v. Hull Corp

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-2241

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Berg Chilling Sys v. Hull Corp" (2003). *2003 Decisions.* Paper 372.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/372

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 02-2241
_____

BERG CHILLING SYSTEMS INC.;

ACCEPTANCE INSURANCE COMPANY,

v.

HULL CORPORATION;
SP INDUSTRIES, INC.,
d/b/a Hull Company,

Defendants/Third-Party Plaintiffs

v.

VICARB, INC., ALFA LAVAL, INC.
ALFA LAVAL VICARB, JOHN L. HULL,
LEWIS W. HULL,

Third Party Defendants

Hull Corporation,

Appellant

BILLET & CONNOR, P.C.,

Intervenor-Appellee

(See Court's Order of 8/22/02)

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 00-cv-05075)
District Judge: Honorable Berle M. Schiller
_____

Argued April 7, 2003

Before:  BECKER, <u>Chief Judge</u>[*], BARRY, and BRIGHT[**], <u>Circuit Judges</u>.

(Filed:    July 11, 2003                    )

GREGORY L. LIACOURAS, ESQUIRE (ARGUED)
LESLIE H. SMITH, ESQUIRE
Liacouras & Smith, LLP
1515 Market Street, 9th Floor
Philadelphia, PA 19102

        Attorneys for Appellant

JONATHAN M. FIELD, ESQUIRE (ARGUED)
Mintzer Sarowitz, Zeris, Ledva & Meyers
1528 Walnut Street, 22nd Floor
Philadelphia, PA 19102

        Attorney for Appellee

ROBERT DOUGLAS BILLET, ESQUIRE
D. RYAN NUSSEY, ESQUIRE (ARGUED)
Billet & Connor
2000 Market Street, Suite 2803
Philadelphia, PA 19103-3201

        Attorneys for Intervenor-Appellee

_____

OPINION OF THE COURT
_____

PER CURIAM.

_____

[*]Judge Becker completed his term as Chief Judge on May 4, 2003.

[**]Honorable Myron H. Bright, United States Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation.

2

Acceptance Insurance Company ("Acceptance"), brought an action seeking a declaratory judgment that it has no duty to defend or indemnify Hull Corporation ("Hull"), and SP Industries, Inc., d/b/a Hull Company ("SPI"), with respect to potential liability in Berg Chilling Sys., Inc. v. Hull Corp., E.D. Pa. Civil Action No. 00-5075, (the "Berg litigation"). The District Court consolidated this action with the Berg litigation on January 14, 2002.[1] After initially ruling that Acceptance had a duty to defend its insured, the District Court reconsidered its decision and ruled that Acceptance has no duty to defend or indemnify and entered a judgment of dismissal. Hull now appeals the judgment. We reverse and remand for proceedings in accordance with this opinion.

## I. BACKGROUND

### A. *Procedural History*

On October 6, 2000, Berg Chilling Systems Inc. ("Berg"), sued Hull for indemnification of a $1.7 million international arbitration award against Berg by Beijing Huadu Meat Products Company ("Huadu"), based on a contract between Berg and Huadu for the supply of equipment for producing dehydrated beef products. Berg joined SPI, which had previously purchased some of Hull's assets. In its first amended complaint, Berg alleged that Hull and SPI were liable to Berg for indemnification or contribution of the arbitration award, based on Hull's breach of contract and warranty in connection with

---

[1] By order dated February 14, 2002, the District Court *sua sponte* consolidated the Berg litigation with the Acceptance coverage litigation under Civil Action No. 00-CV-05075. The District Court subsequently unconsolidated the cases.

3

its contract to supply certain freeze drying equipment to Berg for eventual supply to Huadu. Hull and SPI cross-claimed against each other for indemnity and contribution.[2]

Acceptance issued to Hull a Commercial General Liability Insurance Policy ("Policy"), effective April 21, 1994, and reissued virtually identical policies annually, extending coverage until April 21, 1999. Under the Policy, coverage is afforded only to bodily injury or property damage "which occurs within the policy territory during the policy."

On September 20, 2000, Hull sent a letter to Acceptance requesting defense and indemnification in the Berg litigation. Acceptance denied coverage under the Policy. On February 7, 2001, Acceptance filed a Complaint in Declaratory Judgment, amended February 20, 2001, in which Acceptance sought a declaration that it is required neither to defend nor indemnify Hull for any losses resulting from the Berg litigation. Acceptance claimed that (1) the property damage alleged by Berg does not constitute an "occurrence" under the Policy; (2) any alleged occurrences did not occur within the "policy territory"; and (3) Hull's claim is barred by the specific exclusions of the Policy. Hull responded by arguing that its product, freeze dryer equipment, was damaged by a combination of (1) a road incident during cross-continental shipment by Berg before shipment to Huadu; (2) Huadu's failure to supply clean cooling water and an automated monorail at its facility;

---

[2]For the purposes of this opinion, we have omitted a description of Hull's and SPI's respective Third-Party Complaints against Third-Party Defendants and Cross-Claims by Third-Party Defendants.

and (3) the failure of system components to work during start-up testing at Huadu's facility, affecting the entire system. Hull contended that property damage resulting from these incidents is covered by the Policy, that its claim falls within the "policy territory," and that the Policy exclusions do not apply.

The District Court considered these arguments and ruled on January 14, 2002, that Acceptance had a duty to defend its insured in the Berg litigation. The Court based its decision on allegations of negligence in the pleadings, specifically, on SPI's counter-cross-claim which contained an allegation of negligence. The District Court also concluded that any alleged property damage occurred within the "policy territory," and Acceptance had not met its burden of showing that any of the exclusions apply to preclude coverage under the Policy.

Acceptance then moved for reconsideration of that decision. In an April 2, 2002 decision, the Court recognized that "[a]lthough the parties have not provided any new evidence, they have supplemented the record with extensive briefs." Convinced that its previous decision was "in error as a matter of law," the District Court reversed itself and determined that Acceptance had no duty to defend or indemnify Hull. In reaching its decision, the Court applied the "gist of the action" test under Pennsylvania law. This test required the Court to ask whether the underlying lawsuit sounds primarily either in tort or in contract. The Court determined that the underlying dispute among Berg, Hull and SPI

5

concerns the allocation of damages arising from alleged breaches of contract and warranty. As such, this contract-based liability sounds not in tort, but in contract.

Hull Corporation filed a Notice of Appeal from the trial court's April 2, 2002 order granting Acceptance's motion for relief from judgment, and from the Court's April 19, 2002 order granting the withdrawal of Acceptance's appointed counsel for Hull. Acceptance's appointed counsel, Billet & Connor, intervenes in this appeal asking that we dismiss Hull's appeal of the April 19 order on the grounds that Hull is no longer pursuing it.

### B. Factual History

In 1995, Berg entered into a $2.8 million equipment contract with Huadu to supply a large food processing system. Pursuant to a purchase order dated April 20, 1995, Hull sold $1,150,000 in freeze dryer equipment to Berg for incorporation into the larger food processing system Berg contracted to provide to Huadu. In addition to Hull, Berg contracted with five other major suppliers of component parts for the system.

Pursuant to its contract with Huadu, Berg assumed sole responsibility for shipping all of the component parts to Huadu's production facility in Beijing. During Berg's transportation of the Hull freeze dryer components from the East Coast of the United States to Vancouver, Canada, the transporter was involved in a road accident. The equipment contract between Huadu and Berg contemplated that ratification by both parties would be obtained on or before April 30, 1995. Due to delays, however, Berg and

6

Huadu entered into a subsequent agreement ("the amending agreement"), which amended the equipment contract with respect to the delivery dates of the equipment, including the Hull freeze dryer equipment.

During initial start-up testing of the freeze drying system in 1997, Huadu discovered a series of problems, including damage to, and non-conformity of, the heat platen racks.[3] Hull also claims that during product testing Huadu failed to provide a clean cooling water supply, which resulted in contamination and failure of the refrigeration compressors.

Huadu eventually complained to Berg about the series of damages and delays, and claimed that the system could not be successfully operated. In connection with the Huadu complaints, Berg, Hull and Huadu entered into a new agreement, dated October 8, 1997, ("the modified agreement"). Thereafter, however, Huadu rejected the entire food processing system, including the freeze drying system provided by Hull.

On March 29, 1999, Huadu submitted an Arbitration Claim against Berg to the Arbitration Institute of the Stockholm Chamber of Commerce. The Arbitration panel found in favor of Huadu. Berg twice requested that Hull participate in the arbitration proceedings as a defendant along with Berg. Hull did not participate in the arbitration proceedings.

*C. Additional Developments*

---

[3]Hull alleges that the platen racks were damaged again in early 1998.

7

In January 2003, the underlying Berg litigation went to trial before the District Court. Hull claims that documents and testimony from that trial support its allegations of "occurrences" under the Policy. Hull has made some of these items available to the panel for review in the form of an addendum to the joint appendix.

At oral argument in this matter, the panel requested post-argument memoranda addressing the question of the extent to which this Court may look to the record, beyond the first amended complaint, to assess whether there was an "occurrence" which would require Acceptance to defend Hull in the lawsuit brought by Berg. The panel also requested that counsel address whether the delay in delivering the freeze dryer system could result in damages which would qualify as an "occurrence" under the Policy, and discuss any issue that might be addressed usefully by the District Court if the case is remanded.

II. DISCUSSION

*A. Dismissal of Intervenor*

As a preliminary matter, we dismiss Hull's appeal of the District Court's April 19, 2002 order permitting Billet & Connor to withdraw as counsel. In its brief, Hull does not mention the April 19 order or make any argument that the April 19 order should be reversed. We conclude that Hull has abandoned this issue on appeal and we dismiss it.

*B. The Duty to Defend*

The parties agree that the insurance contract is governed by Pennsylvania law. See Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999) (citing Travelers Indem. Co. v. Fantozzi ex rel. Fantozzi, 825 F. Supp. 80, 84 (E.D. Pa. 1993) (Pennsylvania conflict of laws principles dictate that an insurance contract is guided by the law of the state in which it is delivered)).

We will apply the general rules of insurance contract construction and read the Policy as a whole and construe it according to its plain meaning. "An insurer's duty to defend an insured in litigation is broader than the duty to indemnify, in that the former duty arises whenever an underlying complaint may 'potentially' come within the insurance coverage." Id (citing Erie Ins. Exch. v. Claypoole, 449 Pa. Super. 142, 673 A.2d 348, 355 (1996)). In resolving this appeal, we will only consider Acceptance's duty to defend.

Under the applicable law, an insurer's duty to defend arises whenever the allegations in a complaint filed against the insured potentially fall within the policy's coverage. Lucker Mfg., Inc. v. Home Ins. Co., 23 F.3d 808, 813 (3d Cir. 1994). The burden remains with the insurer unless the insurer is able to demonstrate that the complaint alleges factual liability which, if proved, does not fall within the scope of the policy. Id. (citing Stidham v. Millvale Sportsmen's Club, 421 Pa. Super. 548, 618 A.2d 945, 953-54 (1992) (if indemnification depends upon the existence or nonexistence of disputed facts, the insurer has a duty to defend until the claim is narrowed to one patently

9

outside the policy coverage)). "In determining the existence of a duty to defend, the factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured." Frog, Switch, 193 F.3d at 746.

In Lucker, we explained: "The underlying complaint need not track the policy language for there to be coverage: under the liberal rules of notice pleading, [the] complaint need[] only to indicate the type of litigation involved so that the defendant would have fair notice of the claim and its defenses." Lucker, 23 F.3d at 814. In that case, the complaint's failure to include "magic words" did not relieve the insurer of its duty to defend. See id. (explaining that plaintiff's decision not to include "loss of use" or "tangible property" in the complaint does not relieve the insurer of its duty to defend).

Similarly, Pennsylvania's courts have taken a relatively broad view in discerning whether a complaint triggers the insurer's duty to defend. In Heffernan & Co. v. Hartford Ins. Co., 418 Pa. Super. 326, 614 A.2d 295 (1992), the Superior Court concluded that a reviewing court may determine a duty to defend by supplementing the facts alleged in the complaint with discovery responses. The Heffernan Court recognized the complaint at issue sought relief that did not trigger the duty to defend; however, when the parties filed answers to interrogatories, "the potential for liability became apparent" and the insurer incurred a duty to defend. 614 A.2d at 332. At the time of the Court's decision, the complaint had not been amended to reflect the discovery answers. Nonetheless, the Court concluded that the insurer had an obligation to enter an appearance on behalf of its

10

insured and defend the action because a complaint can be amended to state an additional damage claim at any time prior to final judgment. The Court also relied on the fact that the parties were on notice that a claim triggering the duty to defend could be made in the underlying action.

In its April 2, 2002 reconsideration of the duty to defend issue, the District Court did not consider any of the foregoing case law. Instead, the Court relied upon a Pennsylvania case, <u>Redevelopment Auth. of Cambria County v. International Ins. Co.</u>, 454 Pa. Super. 374, 390-92, 685 A.2d 581, 589-90 (1996), which formulated a "gist of the action" test. Under this test, if the underlying claim arises out of and is based upon duties imposed by contract between the parties, the claim does not trigger coverage under a general liability insurance policy. <u>See</u> <u>id.</u>

At oral argument, both parties conceded that the District Court erred in applying this test under Pennsylvania law. The test has not been adopted by the Pennsylvania Supreme Court and it does not comport with the case law of this Circuit. We have made clear that a court undertaking a duty to defend coverage analysis should not rely entirely upon whether a plaintiff characterizes its claim as one arising in tort or contract. Under Pennsylvania law, breach of warranty claims have been held to sound in tort. <u>See</u> <u>Montgomery County v. Microvote Corp.</u>, 320 F.3d 440, 450 n.4 (3d Cir. 2003) (citing <u>Williams v. West Penn Power Co.</u>, 467 A.2d 811, 817 (Pa. 1983)).

11

We decline to resolve the issue of whether a qualified occurrence exists and whether the underlying Berg litigation pleadings were sufficient to trigger a duty to defend because the District Court has not had an opportunity to consider these matters. Instead, we remand to the District Court with instructions to consider Hull's argument that there were three separate occurrences: (1) the road accident that caused damage to the freeze dryers and Berg's failure to repair the damage; (2) the negligent modification work done on the Hull freeze dryers by SPI; and (3) the dirty water, steam, and nitrogen provided by Huadu over an eighteen-month period. The District Court should also consider whether it can look beyond the four corners of the complaint to determine whether there was an occurrence.

III. CONCLUSION

We reverse and remand this case to the District Court to reconsider and determine whether Acceptance has a duty to defend the underlying Berg action against Hull and SPI.

_____

TO THE CLERK:

Please file the foregoing opinion.

_____

Circuit Judge

DATED: