INDALEX INC. f/k/a, and successor by merger to, Indalex America Inc. f/k/a Caradon America Inc.; Indalex Limited f/k/a Caradon Limited; Harland Clarke Holdings Corp. f/k/a Clarke American Corp. f/k/a, and successor by merger to, Novar USA Inc. f/k/a Caradon USA Inc. f/k/a Caradon Inc., Appellants

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, Appellee.

Appeal of Indalex Inc. and Harland Clarke Holdings Corp.

Superior Court of Pennsylvania.

Argued Jan. 9, 2013.
Filed Dec. 3, 2013.
Reargument Denied Feb. 10, 2014.

Joseph C. Safar, Pittsburgh, for appellants.

Joel M. Eads, Ardmore, for appellee.

BEFORE: DONOHUE, SHOGAN and WECHT, JJ.

OPINION BY SHOGAN, J.:

Indalex Inc. (formerly known as, and successor by merger to, Indalex America Inc. formerly known as Caradon America Inc.) and Harland Clarke Holdings Corp. (formerly known as Clarke American Corp., formerly known as, and successor by merger to, Novar USA Inc. formerly known as Caradon USA Inc. formerly known as Caradon Inc.) (collectively "Appellants") appeal from the order entered on March 7, 2012, in the Allegheny County Court of Common Pleas that granted summary judgment in favor of National Union Fire Insurance Company of Pittsburgh, Pennsylvania, ("Appellee") in this insurance coverage dispute. After careful review, we reverse and remand for further proceedings consistent with this opinion.

In their First Amended Complaint filed on July 13, 2007, Appellants alleged they were entitled to coverage from Appellee under a commercial umbrella policy. Appellants' claims stem from multiple out-of-state lawsuits filed by homeowners and property owners. OneBeacon Insurance Group, pursuant to a primary policy of insurance with Appellants, had provided a defense and indemnity in the underlying lawsuits until November of 2005, when the limits of that policy were exhausted. Appellees' Motion for Summary Judgment, 1/14/11, Exhibit W. The underlying lawsuits claimed that Appellants' windows and doors were defectively designed or manufactured and resulted in water leakage that caused physical damage, such as mold and cracked walls, in addition to personal

injury.[1] Appellees' Motion for Summary Judgment, 1/14/11, Exhibit C at ¶ 36, 38, Exhibit F at ¶ 24, and Exhibit R at ¶¶ 24, 76, 79, and 84. The out-of-state claims against Appellants were based on strict liability, negligence, breach of warranty, and breach of contract. Appellee countered that it was not required to provide coverage because under Pennsylvania law there was no occurrence triggering coverage. On January 14, 2011, Appellee filed a motion for summary judgment that the trial court granted in an order filed on March 7, 2012. The trial court concluded that *Kvaerner Metals Division of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 589 Pa. 317, 908 A.2d 888 (2006), barred coverage. Trial Court Opinion, 3/8/12, at 22. On April 5, 2012, Appellants timely appealed.

On appeal, Appellants raise the following issues:

1. Did the trial court err in ruling that [Appellee] has no obligation to defend or indemnify [Appellants] under the terms and conditions of the commercial umbrella policy issued by [Appellee] for the period from October 1, 1998 to October 1, 1999 [ ("the policy") ]?

 a. Did the trial court err in characterizing the Underlying Lawsuits as involving solely "faulty workmanship" and therefore as not constituting an "Occurrence," as defined in [the policy]?

 b. Did the trial court err by failing to recognize that the Underlying Lawsuits pleaded tort-based products liability claims involving damage to property other than the doors and windows themselves and therefore are clearly covered under [the policy], when read as a whole?

 c. Did the trial court fail to engage in a proper duty to defend analysis, relying improperly on Pennsylvania's gist of the action doctrine to ignore legally viable tort claims against product manufacturers pleaded under the law of foreign states, which trigger a duty to defend?

Appellants' Brief at 4. As Appellants' issue and sub-issues are interrelated, we will address them concurrently.

Our scope and standard of review of an order granting summary judgment are well settled.

We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*NASDAQ OMX PHLX, Inc. v. PennMont Securities*, 52 A.3d 296, 303 (Pa.Super.2012).

When interpreting an insurance policy, we first look to the terms of the policy. "When the language of the policy is clear and unambiguous, we must give effect to that language." *Donegal Mut. Ins. Co. v. Baumhammers*, 595 Pa. 147, 938 A.2d 286, 290 (2007) (quoting *Kvaerner*, 908 A.2d at 897). "However, 'when a

---

1. There were two types of underlying complaints: (1) where contractors or product supplier defendants brought third or fourth party complaints against an affiliate of Appellants; and (2) where the homeowners or property owners sued an affiliate of Appellants directly.

provision in the policy is ambiguous, the policy is to be construed in favor of the insured....'" *Id.* Also, we do not treat the words in the policy as mere surplusage and, if at all possible, we construe the policy in a manner that gives effect to all of the policy's language. *Tenos v. State Farm Ins. Co.*, 716 A.2d 626, 631 (Pa.Super.1998) (citing *General Mills, Inc. v. Snavely*, 203 Pa.Super. 162, 199 A.2d 540, 544 (1964)).

We then compare the terms of the policy to the allegations in the underlying complaint. "It is well established that an insurer's duties under an insurance policy are triggered by the language of the complaint against the insured." *Kvaerner*, 908 A.2d at 896. In determining whether an insurer's duties are triggered, the factual allegations in the underlying complaint are taken as true and liberally construed in favor of the insured. "It does not matter if in reality the facts are completely groundless, false or fraudulent. It is the face of the complaint and not the truth of the facts alleged therein...." *D'Auria v. Zurich Ins. Co.*, 352 Pa.Super. 231, 507 A.2d 857, 859 (1986).

Although the case *sub judice* involves both the duty to defend and the duty to indemnify, we focus primarily on the duty to defend because it is broader than the duty to indemnify. *Kvaerner*, 908 A.2d. at 896, n. 7. If an insurer does not have a duty to defend, it does not have a duty to indemnify. *Id.* However, "both duties flow from a determination that the complaint triggers coverage." *General Accident Ins. Co. of America v. Allen*, 547 Pa. 693, 692 A.2d 1089, 1095 (1997). Furthermore, if a single claim in a multi-claim lawsuit is potentially covered, an insurer must defend against all claims until it is clear that the underlying plaintiff cannot recover on any claim. *American States v.*

*Maryland Cas.*, 427 Pa.Super. 170, 628 A.2d 880, 887 (1993).

The policy at issue states that Appellee is obligated to provide coverage for "liability imposed by law or assumed by the Insured under an Insured Contract because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury that takes place during [the] Policy Period and is caused by an occurrence happening anywhere in the world." Commercial Umbrella Policy, Section I (emphasis omitted). Furthermore, the policy provides for a separate $25 million aggregate limit of liability for a "Products–Completed Operations Hazard," which includes "all Bodily Injury and Property Damage occurring away from premises you own or rent and **arising out of** Your Product or Work Scope." *Id.* at Section IV., ¶ J.1 (emphasis added). "Property damage **in** your product" is excluded. *Id.* at Section V., ¶ F (emphasis added). Also, the definition of "Your Product" includes all of the insured's "goods or products" and related "[w]arranties or representations ... with respect to the fitness, quality, durability, performance or use." *Id.* at Section IV., ¶ M. In addition, covered property damage includes "[p]hysical injury to tangible property, including all resulting loss of use" and "[l]oss of use of tangible property that is not physically injured." *Id.* at Section IV., ¶ K.

Although these provisions are relevant to our analysis, the major point of contention between the parties relates to the meaning of "occurrence" in the policy. The policy states:

**H. Occurrence means:**

1. As respects Bodily Injury or Property Damage, an accident, including continuous or repeated exposure to conditions, which results in Bodily Injury or Property Damage neither expected nor intended from the standpoint of the In-

sured. All such exposure to substantially the same general conditions shall be considered as arising out of one Occurrence;

 2. As respects Personal Injury, an offense arising out of your business that results in Personal Injury. All damages that arise from the same or related injurious material or act shall be considered as arising out of one Occurrence, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants[.]

Commercial Umbrella Policy, Section IV. at ¶ H(1) and (2).

Here, the trial court concluded that the insurance policy did not afford coverage due to the absence of an "occurrence" as that word is defined in the policy and based on the Pennsylvania Supreme Court's decision in *Kvaerner*. Trial Court Opinion, 3/8/12, at 22. After careful review of the record, the relevant law, and the arguments of the parties, we are constrained to disagree.

In *Kvaerner*, Bethlehem Steel Corporation contracted with Kvaerner for the construction of a coke oven battery. *Kvaerner*, 908 A.2d at 891. Bethlehem Steel subsequently brought an action against Kvaerner claiming breach of contract and breach of warranty due to the coke oven battery failing to meet construction specifications and being in a damaged condition. *Id.* Kvaerner sought coverage from its insurer, National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union"), for defense in the underlying suit and indemnification. *Id.* National Union denied coverage claiming that the damage to the faulty coke oven battery was not an occurrence and, even if it was damaged by rain as Kvaerner complained, it was not an "accident" as defined in the insurance policy. *Id.*

The Pennsylvania Supreme Court agreed with National Union, as follows:

We hold that the definition of "accident" required to establish an "occurrence" under the policies cannot be satisfied by claims based upon faulty workmanship. Such claims simply do not present the degree of fortuity contemplated by the ordinary definition of "accident" or its common judicial construction in this context. To hold otherwise would be to convert a policy for insurance into a performance bond. We are unwilling to do so, especially since such protections are already readily available for the protection of contractors.

*Id.* at 899 (footnote omitted). In summary, because the underlying complaint alleged only property damage from faulty workmanship to the work product itself, the Supreme Court concluded that no coverage was due. *Id.*

The Court further supported its holding, however, by quoting from a law review article by Roger C. Henderson, as follows:

The risk intended to be insured [by commercial general liability policies] is the possibility that the goods, products or work of the insured, once relinquished and completed, will cause bodily injury or damage to property other than to the completed work itself and for which the insured by [sic] be found liable. The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient work or product. This liability, however, is not what the coverages in question are designed to protect against. **The coverage is for tort liability for physical damages to others and not for contractual liability** of the insured

for economic loss because the product or completed work is not that for which the damaged person bargained.

> Insurance Protection for Products Liability and Completed Operations; What Every Lawyer Should Know, 50 Neb. L.Rev. 415, 441 (1971).

*Kvaerner,* 908 A.2d at 899, n. 10 (emphasis added). Thus, the *Kvaerner* Court's decision was also based on the fact that the underlying complaint contained only claims for breach of contract and breach of warranty.

*Kvaerner* was subsequently relied upon by this Court in *Millers Capital Ins. Co. v. Gambone Bros. Development Co., Inc.,* 941 A.2d 706 (Pa.Super.2007). Gambone Brothers Development Company Incorporated ("Gambone") planned and built housing developments. Homeowners in two of Gambone's housing developments filed lawsuits stating that their homes had suffered damage attributable to faulty workmanship. As described by a prior panel of this Court,

> Both complaints aver Gambone and/or its subcontractors built homes with defective stucco exteriors, windows, and other artificial seals intended to protect the home interiors from the elements. Both complaints are based on claims for faulty workmanship. Both complaints allege that when the defects manifested themselves, water damage resulted to the interior of the larger product—in this case, the home interiors.

*Id.* at 713.

The homeowners from one of the housing developments raised claims for breach of contract, breach of warranty, negligence, strict liability, fraud, misrepresentation, and violations of the Unfair Trade Practice and Consumer Protection Law ("UTPCPL"). Through preliminary objections, the negligence claims were dismissed. The homeowners from the other

housing development raised claims for breach of implied warranty, fraudulent nondisclosure, negligent misrepresentation, and violation of the UTPCPL. However, only the breach of implied warranty claim survived preliminary objections. During the relevant period, Gambone was insured by a commercial general liability policy issued by Millers Capital Insurance Company ("Millers Capital"). Relying on *Kvaerner,* Millers Capital denied coverage to Gambone due to the allegations of faulty workmanship. The trial court subsequently granted summary judgment in favor of Millers Capital on this issue, and this Court affirmed. In doing so, however, the panel in *Gambone* focused on the allegations of faulty workmanship in what they had characterized as the product itself, the home.

In *Erie Insurance Exchange v. Abbott Furnace Co.,* 972 A.2d 1232 (Pa.Super.2009), this Court further extended the *Kvaerner* holding to a suit involving a negligence claim, as well as breach of contract claims. Innovative Magnetics, Inc. ("IMI") sued Abbott Furnace Company ("Abbott") based on a faulty annealing furnace, which Abbott designed and installed, for the manufacture of ground fault magnets. *Id.* at 1234. The defect in the annealing furnace was due to faulty welding. *Id.* at 1235. Abbott sought coverage under an insurance policy it had with Erie Insurance ("Erie"), and Erie denied coverage. The trial court granted summary judgment in favor of Erie. *Id.* at 1236. Abbott appealed.

This Court summarized Abbott's argument on appeal as follows:

> The trial court relied upon *Kvaerner Metals Div. of Kvaerner United States, Inc. v. Commercial Union Ins. Co.,* 589 Pa. 317, 908 A.2d 888 (2006), for the proposition that a third party's complaint alleging only faulty workmanship

and damage to the insured's work product does not trigger coverage under a standard commercial general liability policy. However, Appellant argues that in addition to the claims for faulty workmanship and damage to the insured's work product, IMI's second amended complaint included allegations that the furnace actively malfunctioned and caused damage to other IMI property, thereby triggering coverage under the provisions of a general liability policy. Accordingly, Appellant argues that the trial court erred in entering summary judgment in favor of Appellee.

*Abbott*, 972 A.2d at 1237.

Thus, this Court looked to the complaint to determine if IMI actually "pleaded a negligence claim that alleged the furnace actively malfunctioned, directly and proximately causing destruction of and damage to IMI's laminations." *Abbott*, 972 A.2d at 1238.[2] In determining whether a negligence claim was pled in that instance, the Court was guided by the following principles. "When a plaintiff alleges that the defendant committed a tort in the course of carrying out a contractual agreement, Pennsylvania courts examine the claim and determine whether the 'gist' or gravamen of it sounds in contract or tort." *Id.* "The test is not limited to discrete instances of conduct; rather, the test is, by its own terms, concerned with the nature of the action as a whole." *Id.* (citation omitted). Ultimately, this Court concluded that a negligence claim was not adequately pled and, therefore, the gist of the action was a breach of contract that was not an occurrence. *Id.* at 1239.

Upon review of the record in the instant matter, we are constrained to conclude

that neither *Kvaerner, Gambone,* nor *Abbott,* bar coverage. As acknowledged by the trial court in this case, the *Kvaerner* holding was limited to situations "where the underlying claims were for breach of contract and breach of warranty, and the only damages were to the [insured's] work product." Trial Court Opinion, 3/8/12, at 12. *Gambone* was a suit against a property developer and builder of homes, not a typical product manufacturer, with the "product" being the home itself. In the instant case, we have an off-the-shelf product that failed and allegedly caused property damage and personal injury. Also, the court in *Gambone* framed the issue as faulty workmanship in the application of the stucco and other items. Here, there are issues framed in terms of a bad product, which can be construed as an "active malfunction," and not merely bad workmanship. The decision in *Abbott* was based on a contract between a magnetic equipment manufacturer and annealing furnace maker. Although a negligence claim was pled in *Abbott,* the Court found that it was not adequately pled. Therefore, it applied the gist of the action doctrine to conclude that the lawsuit was basically a breach of contract action between the contracting parties.

We must also disagree with the trial court's conclusion that the language in the umbrella policy in the instant case is "almost identical" to the policy language in *Kvaerner.* Trial Court Opinion, 3/8/12, at 8. As noted above, the policy at issue here includes in the definition of occurrence the subjective language "[a]s respects Bodily Injury or Property Damage, an accident, including continuous or repeated exposure to conditions, which results in Bodily Inju-

---

**2.** In its analysis, the Court reiterated that general liability policies are intended to provide coverage if the insured's product actively malfunctions, causing personal injury or damages to another's property. *See Ryan Homes v. Home Indem. Co.,* 436 Pa.Super. 342, 647 A.2d 939, 942 (1994).

ry or Property Damage neither **expected nor intended from the standpoint of the Insured.**" Commercial Umbrella Policy, at ¶ H(1) (emphasis added). However, the policy at issue in *Kvaerner* contained no such subjective definition. *See Kvaerner*, 908 A.2d at 897 (stating that the policy defined occurrence as "an accident, including continuous or repeated exposure to substantially the same or general harmful conditions."). Moreover, Appellee points out in its brief that the trial court stated "the key term in the ordinary definition of 'accident' is 'unexpected.'" Appellee's Brief at 12. The policy at issue provides that it is the insured's subjective viewpoint, and damages such as mold related health issues were arguably not expected, *see* Appellee's Motion for Summary Judgment, 1/14/11, Exhibits C and J.

 In summary, an insurance company is obligated to defend its insured whenever the complaint filed by the injured party may potentially come within the policy's coverage. *American States Ins. Co. v. Maryland Casualty Company*, 427 Pa.Super. 170, 628 A.2d 880, 887 (1993). Our review of the complaints in this case reveals that the claims against Appellant, which were brought under the laws of five different states, involved product-liability-based tort claims. Construing the policy in a manner that gives effect to all of its language, we conclude that Appellee is obligated to defend Appellants. Simply stated, because Appellants set forth tort claims based on damages to persons or property, other than the insured's product, we cannot conclude that the claims are outside the scope of the coverage.

In so holding, we specifically reject preclusion based on a gist of the action theo-

ry. This doctrine has been described as follows:

Under Pennsylvania law, a cause of action framed as a tort but reliant upon contractual obligations will be analyzed to determine whether the cause of action properly lies in tort or contract. "In general, courts are cautious about permitting tort recovery based on contractual breaches. In keeping with this principle, this Court has recognized the 'gist of the action' doctrine, which operates to preclude a plaintiff from re-casting ordinary breach of contract claims into tort claims." *Hart v. Arnold*, 884 A.2d 316, 339 (Pa.Super.2005), *appeal denied*, 587 Pa. 695, 897 A.2d 458 (2006).

*Autochoice Unlimited, Inc. v. Avangard Auto Finance, Inc.*, 9 A.3d 1207, 1212 (Pa.Super.2010).

 The gist of the action doctrine forecloses tort claims "(1) arising solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim." *Reardon v. Allegheny College*, 926 A.2d 477, 486 (Pa.Super.2007) (citations omitted).

As an initial matter, we note that the gist of the action doctrine has not been adopted by our Supreme Court in an insurance coverage context. Indeed, the application of the doctrine in this context would be inconsistent with the duty to defend, which is broader than the duty to indemnify and applicable when a claim is potentially covered.[3] While not binding,

---

**3.** We acknowledge that this Court applied the gist of the action doctrine in *Abbott*. However, as noted by Appellants, this was not incon-

sistent with New Jersey law, which governed the underlying claim. Appellant's Brief at 32–33, n. 15; *Abbott*, 972 A.2d at 1234. Most

we find the analysis of the relationship between gist of the action and duty to defend actions by the United States District Court for the Western District of Pennsylvania to be instructive in this regard:

> If the underlying complaint contains more than one cause of action, and one of them would constitute a claim within the scope of the policy's coverage, the insurer must defend the complaint until it can confine the claim to a recovery excluded from the scope of the policy. *American States v. Maryland Cas.*, 427 Pa.Super. 170, 628 A.2d 880, 887 (Pa.Super.Ct.1993).[2]

---

[2] This principle would be inconsistent with the "gist of the action" doctrine, to which Plaintiff refers, when analyzing a duty to defend. That doctrine "precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa.Super.Ct.2002). Thus, it makes sense that the doctrine does not govern an analysis of duty to defend coverage. *Berg Chilling Sys. v. Hull Corp.*, 70 Fed.Appx. 620, 624 (3d Cir.2003). Of course, I am not asked here to preclude the underlying plaintiff from asserting its negligent design claim. That is a question for the court presiding over the underlying action; for present purposes, the negligent design claim is present and I must consider it.

*National Fire Ins. Co. of Hartford v. Robinson Fans Holdings, Inc.*, Not Reported in F.Supp.2d, 2011 WL 1327435 (W.D.Pa. 2011). Likewise, tort claims are present in the underlying suits, and we must consider them.[4] Whether the laws under which the complaints are brought will bar those tort claims because of the application of the gist of the action or a similar doctrine will be decided by the courts presiding over

significantly, we agree with Appellants that the duties allegedly breached arose from an express contractual agreement in *Abbott,* not from tort duties imposed as a matter of public policy.

those lawsuits. Ultimately, because the gist of the action doctrine has never been adopted by our Supreme Court in an insurance coverage context, we are convinced that, at this juncture of a duty to defend claim, applying the gist of the action doctrine is inappropriate. *See Berg Chilling Sys.,* 70 Fed.Appx. at 624 (stating that a court undertaking a duty to defend analysis should not rely entirely upon whether the plaintiff characterizes its claim as one arising in tort or contract).

For the reasons set forth above, we conclude that the trial court erred in granting summary judgment. Because the underlying complaints alleged defective products resulting in property loss, to property other than Appellants' products, and personal injury, we conclude there was an "occurrence" and reverse the order granting summary judgment.

Order reversed. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

---

4. We note that the Pennsylvania Supreme Court has found even a breach of warranty claim can sound in tort. *Williams v. West Penn Power Co.*, 502 Pa. 557, 467 A.2d 811, 816 (1983).