J-E01001-22

2022 PA Super 203

| | |
|---|---|
| MACMILES, LLC D/B/A GRANT STREET TAVERN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ERIE INSURANCE EXCHANGE | |
| Appellant | No. 1100 WDA 2021 |

Appeal from the Order Entered May 25, 2021
In the Court of Common Pleas of Allegheny County
Civil Division at No: GD-20-007753

BEFORE: PANELLA, P.J., BENDER, P.J.E., BOWES, J., LAZARUS, J., STABILE, J., KUNSELMAN, J., NICHOLS, J., McLAUGHLIN, J., and KING, J.

OPINION BY **STABILE, J.:**                **FILED: NOVEMBER 30, 2022**

Appellant, Erie Insurance Exchange ("Erie"), appeals from the May 25, 2021 order granting summary judgment in favor of Appellee, MacMiles, LLC d/b/a/ Grant Street Tavern ("MacMiles") and denying its motion for judgment on the pleadings. MacMiles owns and operates the Grant Street Tavern in Pittsburgh Pennsylvania. Like many similarly situated parties, MacMiles suffered a significant disruption of its business activity during the Covid-19 pandemic. And like many similarly situated parties, MacMiles believed its economic losses due to the loss of use of its business premises were covered under its commercial property insurance. Erie, like many other insurers who have issued policies with substantially similar terms, denied the claim because

MacMiles' commercial property did not suffer any physical damage. This issue has made its way through many of our nation's federal and state courts, but it is an issue of first impression for this Court. Upon review, we reach the same result as the near-universal majority of courts to have addressed this issue: the policy does not cover mere loss of use of commercial property unaccompanied by physical alteration or other condition immanent in the property that renders the property itself unusable or uninhabitable. We therefore reverse the trial court's grant of summary judgment in favor of MacMiles and direct that judgment on the pleadings be granted in favor of Erie.

The specifics of the case before us are as follows. Erie sold MacMiles an insurance policy (the "Policy") covering, among other things, "physical loss of or damage to Covered Property [….]" Policy, Commercial Property Coverage Part, Section I, Coverages/Insuring Agreement.[1] In relevant part, the covered property in this case is the building wherein MacMiles operates the Grant Street Tavern. On March 6, 2020, in response to the spread of the Covid-19 virus, Governor Tom Wolf issued a Proclamation of Disaster Emergency. The proclamation was followed by a March 19, 2020 executive order directing the temporary closure of non-essential businesses. Restaurateurs such as

---

[1] The Policy appears in the certified record as Exhibit "A" to Erie's answer and new matter. All citations to the Policy in this Opinion will refer to sections and paragraphs within the Policy's commercial property coverage part.

MacMiles were limited to offering take out, drive-through, and/or delivery. Dine-in service was prohibited.

MacMiles claimed coverage under the Policy for the loss of use of its physical premises due to the Covid-19 pandemic and Governor Wolf's orders. Erie declined coverage and, on September 29, 2020, MacMiles filed a complaint for breach of contract and declaratory relief. On December 22, 2020, MacMiles filed a motion for summary judgment. Erie filed a cross motion for judgment on the pleadings on March 10, 2021. On May 25, 2021, the trial court entered an interlocutory order[2] granting partial summary judgment in favor of MacMiles, finding coverage under the business income protection portion of the Policy but a triable issue of fact under the civil

_____

[2] The trial court certified the order for immediate appeal under 42 Pa.C.S.A. § 702(b):

> **(b) Interlocutory appeals by permission.--**When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.

42 Pa.C.S.A.§ 702(b). This Court has accepted jurisdiction pursuant to § 702(b) and Rules of Appellate Procedure 312 and 1311(a)(1), governing interlocutory appeals by permission.

authority provision (we discuss these in more detail below) and denying Erie's motion for judgment on the pleadings. This timely appeal followed.

Erie presents two questions:

1. Did the trial court commit an error of law in granting MacMiles' motion for summary judgment in part, and denying Erie's motion for judgment on the pleadings on this record, concluding that MacMiles has shown direct physical loss of or damage to covered property where there was an alleged mere loss of use, absent any harm to the property.

2. Did the trial court commit an error of law in concluding that the Policy's Ordinance or Law exclusion does not apply to MacMiles' claims.

Erie's Brief at 3-4.

Summary judgment is appropriate where there is no genuine issue of fact as to the matter in controversy and the moving party is entitled to judgment as a matter of law. Pa.R.Civ.P. 1035.2(1); **Summers v. Certainteed Corp.**, 997 A.2d 1152, 1159 (Pa. 2010). The pertinent facts are not in dispute. Indeed, MacMiles filed for summary judgment seeking a declaration that the Policy provides coverage given the undisputed facts. We are therefore called upon to interpret the Policy, a question of law for which our standard of review is *de novo* and our scope of review is plenary. **Summers**, 997 A.2d at 1159-60.

An insured may invoke the Declaratory Judgments Act, 42 Pa.C.S.A. § 7531, *et seq.*, to determine whether an insurance contract covers an asserted claim. **Genaeya Corp. v. Harco Nat'l Ins. Co.**, 991 A.2d 342, 346 (Pa. Super. 2010). Where the language of the policy is clear, this Court must

give it effect. ***Indalex Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA***, 83 A.3d 418, 420 (Pa. Super. 2013), ***appeal denied***, 99 A.3d 926 (Pa. 2014). "Also, we do not treat the words in the policy as mere surplusage and, if at all possible, we construe the policy in a manner that gives effect to all of the policy's language." ***Id.*** at 421. We will construe any ambiguity in favor of the insured. ***Id.*** at 420-21. "Contract language is ambiguous if it is reasonably susceptible to more than one construction and meaning." ***Pennsylvania Nat'l Mut. Cas. Ins. Co. v. St. John***, 106 A.3d 1, 24 (Pa. 2014). The insured bears the initial burden of establishing that the asserted claim is covered. ***Erie Ins. Grp. v. Catania***, 95 A.3d 320, 322–23 (Pa. Super. 2014). If the insured is successful, the insurer bears the burden of establishing the applicability of an exclusion. ***Id.***

This dispute arises under a portion of the policy titled "Ultrapack Plus Commercial Property Coverage Part". The Policy provides:

> We will pay for direct physical "loss" of or damage to Covered Property at the premises described in the "Declarations" caused by or resulting from a peril insured against.

Policy, Commercial Property Coverage Part, Section I, Coverages/Insuring Agreement. The Policy's Property Coverage Part provides coverage for buildings, business personal property and personal property of others, and income protection. It also provides additional coverage for losses resulting from certain actions by civil authorities. We first address the income

protection coverage, pursuant to which the trial court granted partial summary judgment in favor of MacMiles.

> Income Protection means loss of "income" and/or "rental income" you sustain due to partial or total "interruption of business" resulting directly from "loss" or damage to property on the premises described in "Declarations" from a peril insured against.

Policy, Commercial Property Coverage Part, Section I, Income Protection – Coverage 3, ¶ A.  Section II of the Policy defines perils".

> This policy insures against direct physical "loss", except "loss" as excluded or limited in this policy.

Policy, Commercial Property Coverage Part, Section II, Perils Insured Against, Covered Cause of Loss.

> "Loss" means direct and accidental loss of or damage to covered property.

Policy, Commercial Property Coverage Part, Section XI, Definitions.  Finally, the following terms govern the amount of insurance available for income protection coverage:

> We will pay the actual income protection loss for only such length of time as would be required to resume normal business operations.  We will limit the time period to the shorter of the following periods:
>
> 1. The time period required to rebuild, repair, or replace such part of the Building or Business Property that has been damaged or destroyed as a direct result of an insured peril; or
>
> 2. Twelve (12) consecutive months from the date of loss.

Policy, Commercial Property Coverage Part, Section I, Income Protection – Coverage 3, ¶ D.

As set forth above, MacMiles alleges loss of use of its covered property (the building housing the Grant Street Tavern) due to the Covid-19 pandemic and the resulting orders from Governor Wolf. Erie denied coverage claiming that the Policy provides coverage in the event of total physical destruction (loss) of property or partial damage to property. According to Erie, loss of use unaccompanied by physical property damage does not trigger coverage.

The trial court, construing the phrase "direct physical loss of or damage to Covered Property", reasoned that the disjunctive "or" between "direct physical loss of" and "damage to Covered Property" supports a reasonable reading of the Policy whereby a "direct physical loss" need not necessarily result from physical or structural damage.

> The spread of COVID-19, and a desired limitation of the same, had a close logical, causal, and/or consequential relationship to the ways in which [MacMiles] materially used its property and physical space. Indeed, the spread of COVID-19 and social distancing measures (with or without the Governor's orders) caused [MacMiles], and many other businesses, to *physically* limit the use of property and the number of people that could inhabit *physical* buildings at any given time, if at all. Thus, the spread of Covid-19 did not, as [Erie] contends, merely impose economic limitations. Any economic losses were secondary to the businesses' *physical* losses.

Trial Court Opinion, 5/25/21, at 14-15 (emphasis in original; citation omitted).

Regarding the amount of insurance provision, the trial court reasoned that it "merely imposes a time limit on available coverage, which ends whenever any required building, repairs, or replacements are completed to any damaged or destroyed property that might exist, *or* twelve (12) months

- 7 -

after the initial date of the loss." *Id.* at 17.  Because it merely imposes a time limit, the trial court found that the amount of insurance provision did not alter its interpretation of "physical loss or damage." *Id.*  In essence, the trial court concluded that MacMiles' claim is covered because MacMiles' proposed reading of the Policy is a reasonable one.[3]

We turn now to the judicial precedent on this question, of which there is none from the appellate courts of this Commonwealth.  But many parties similarly situated to MacMiles have claimed coverage for loss of income during the Covid-19 pandemic and the resulting economic shutdown under insurance contracts substantially similar or identical to the Policy.  Court decisions from across the country overwhelmingly and persuasively support a conclusion that MacMiles' loss of income claim is not covered.

First, and most fundamentally, we observe that MacMiles' claim arises under commercial property insurance coverage.  Nearly all courts addressing

---

[3] The trial court relied in part on a dictionary definition of loss:  "loss is defined as DESTRUCTION, RUIN, … [and/or] the act of losing possession [and/or] DEPRIVATION …"  Trial Court Opinion, 8/2/21, at 12 (pagination ours) (**citing** https://www.merriam-webster.com/dictionary/loss).  Given the disjunctive "or" between "loss" and "damage" in the Policy language, the trial court concluded that loss must mean something other than destruction.  Therefore, the trial court relied on the portion of the definition defining loss as "the act of losing possession [and/or] DEPRIVATION." *Id.*  We are unable to confirm the accuracy of the trial court's citation.  Merriam Webster's online dictionary contains seven entries under "loss."  The first entry, "DESTRUCTION, RUIN" appears exactly as quoted in the trial court's opinion.  https://www.merriam-webster.com/dictionary/loss (last visited June 9, 2022).  The remainder of the definition as quoted and relied on by the trial court ("the act of losing possession [and/or] DEPRIVATION") appears nowhere. *Id.*

this issue have held that economic loss unaccompanied by a physical alteration to the property does not trigger coverage under a commercial property insurance policy. For example, in *Delaware Valley Mgmt., LLC v. Continental Cas. Co.*, ___ F.Supp.3d ___ 2021 WL 5235277 (E.D.Pa. November 10, 2021), the plaintiff medical providers were prohibited to offer elective surgeries due to the Covid-19 pandemic. They alleged that their properties became contamination zones and that their ability to conduct business was significantly limited. *Id.* at *2. Plaintiffs argued, as MacMiles did here, that "physical loss of or damage to Covered Property" was reasonably susceptible of more than one meaning and therefore ambiguous. The District Court disagreed:

> Here, not only was there no physical alteration to the Covered Properties, but there was also no loss of utility of the buildings. Indeed, Plaintiffs admit that they "could remain open, but only for essential surgeries, not elective." (Am. Compl. at ¶ 77.) And Plaintiffs' loss of their ability to perform elective surgeries does not render the building "uninhabitable." Rather, their ability to conduct business was limited, which resulted in purely economic losses.

*Id.* at *5. Likewise, damage to property exists where there is "actual structural damage" or where damage "unnoticeable to the naked eye render[s] the property entirely useless and uninhabitable." *Id.* at *6. The *Delaware Valley* Court noted that the amount of insurance was tied to the period of physical restoration, and that the period of restoration portion of the policy made no sense unless the damage in question was physical damage. *Id.* at *7.

Similarly, the Third Circuit Court of Appeals, applying the law of New York and New Jersey, held that the presence of asbestos does not constitute "physical loss or damage" unless it is present in the air in quantities sufficient to render the building "uninhabitable and unusable." ***Port Authority of New York and New Jersey v. Affiliated FM Ins. Co.***, 311 F.3d 226, 236 (3d Cir. 2002). In ***Port Authority***, the mere presence of asbestos in the insured building was not sufficient to trigger coverage:

> In the case before us, the policies cover "physical loss," as well as damage. When the presence of large quantities of asbestos in the air of a building is such as to make the structure uninhabitable and unusable, then there has been a distinct loss to its owner. However, if asbestos is present in components of a structure, but is not in such form or quantity as to make the building unusable, the owner has not suffered a loss. The structure continues to function—it has not lost its utility. The fact that the owner may choose to seal the asbestos or replace it with some other substance as part of routine maintenance does not bring the expense within first-party coverage.

***Id.*** at 236. (Footnote omitted).

The Court of Common Pleas in ***Spector Gadon Rosen Vinci P.C. v. Valley Forge Ins. Co.***, 2021 Phila. Ct. Com. Pl. LEXIS 16 (June 16, 2021), reached the same conclusion. There, the trial court found that the plaintiff law firm's loss of use of its office space pursuant to Governor Wolf's orders did not trigger coverage under a policy covering direct physical loss of or damage to its commercial property. Applying ***Port Authority***, the trial court found that physical damage to the insured property is necessary, especially in light

of language in the policy contemplating a period of restoration during which physical repairs take place.  *Id.* at *10.

Courts outside of Pennsylvania considering similar policy language have concluded that the loss of use of a business during the Covid-19 pandemic was not covered under policies insuring against physical loss of or damage to commercial property.  In *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450 (5th Cir. 2022) the Court held that the plaintiff's inability to provide dine-in services was an economic loss unrelated to the insured's property:

> TBB has failed to allege any tangible alteration or deprivation of its property.  Nothing physical or tangible happened to TBB's restaurants at all.  In fact, TBB had ownership of, access to, and ability to use all physical parts of its restaurants at all times.  And importantly, the prohibition on dine-in services did nothing to physically deprive TBB of any property at its restaurants.

*Id.* at 456; *see also*, *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 402 (6th Cr. 2021) (noting that direct physical loss and direct physical damage are the "North Star of this property insurance policy from start to finish"); *Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am.,* 499 F. Supp.3d 288 (S.D. Miss.2020) (holding that insurance against physical loss of or

damage to commercial property covers damage to the insured's building and personal property but not the operations).[4]

Instantly, the trial court relied on *In re Soc'y Ins. Co. Covid-19 Bus. Interruption Prot. Ins. Litig.*, 521 F.Supp.3d 729 (N.D. Ill. 2021). There, the Federal District Court found a factual issue as to whether the insured restaurant and hospitality businesses suffered a direct physical loss of their property as a result of the loss of in-person dining during the Covid-19 pandemic. The insureds argued that the presence of Covid-19 on their premises was physical damage that created the loss. *Id.* at 732. The District Court reasoned that the policy in question did not contain a virus exclusion.

_____

[4] As noted in the main text, nearly all courts addressing commercial property insurance policies similar to the one at issue have found that a physical alteration to the subject property is necessary to trigger coverage. For representative federal cases, *See, e.g.*, *10012 Holdings, Inc. v. Sentinel Ins.*, 21 F.4th 216 (2d Cir. 2021); *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303 (7th Cir. 2021); *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327 (7th Cir. 2021); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141 (8th Cir. 2021); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F. 4th 885 (9th Cir. 2021); *Goodwill Indus. of Cent. Okla.*, 21 F.4th 704 (10th Cir. 2021).

For representative state court cases, *See, e.g.*, *Inns by the Sea v. California Mut. Ins. Co.*, 71 Cal.App.5th 688 (Cal. Ct. App. 2021); *Indiana Repertory Theatre v. Cincinnati Cas. Co.*, 180 N.E.3d 403 (Ind. Ct. App. 2022); *Wakonda Club v. Selective Ins. Co. of Am.*, 973 N.W.2d 545 (Iowa 2022); *Verveine Co. v. Strathmore Ins. Co.*, 184 N.E.3d 1266 (Mass. 2022); *Gavrilides Mgmt. Co., LLC v. Michigan Ins. Co.*, ____ N.W. ____ 2022 WL 301555 (Mich. Ct. App. Feb. 1, 2022); *MAC Prop. Grp. v. Selective Fire and Cas. Ins. Co.*, ____ A.3d ____ (N.J. App. Div. June 20, 2022); *Nail Nook, Inc. v. Hiscox Ins. Co. Inc.*, 182 N.E.3d 356 (Ohio Ct. App. 2021); *Collectivo Coffee Roasters Inc. v. Society Ins.*, 974 N.W.2d 442 (Wis. 2022).

*Id.* at 735. Also, like the trial court instantly, the Northern District of Illinois relied on the disjunctive "or" in "direct physical loss of or damage to Covered Property" to support an interpretation of the policy language whereby physical loss meant something different from physical damage. *Id.* at 741.

In any event, the weight of authority is to the contrary and the Seventh Circuit implicitly overruled *In re Soc'y*, concluding that commercial property policies do not provide coverage for business interruptions due to Covid-19. *Sandy Point Dental*, 20 F.4th 327 (7th Cir. 2021). Likewise, in *Hair Studio 1208, LLC v. Hartford Underwriter's Ins. Co.*, 539 F.Supp.3d 409 (E.D.Pa. 2021), the Federal District Court cited *Port Authority* for the proposition that physical loss exists when a structure is "uninhabitable and unusable." *Id.* at 417. Pure economic loss is not property damage. *Id.* Said another way, policy language covering "direct physical loss or damage" unambiguously requires that the "claimed loss or damage must be physical in nature." *Id.* at 418 (quoting *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F.Supp.2d 280, 289 (S.D.N.Y. 2005)).[5]

Cases cited by Appellee and various amici do not refute this point. In *Motorists Mut. Ins. Co. v. Hardinger*, 131 Fed. App'x 823, 826 (3d Cir. 2005), for example, the Third Circuit found a question of fact as to whether

---

[5] In *Philadelphia Parking Auth.*, the Southern District of New York held that economic loss stemming from loss of business after the September 11, 2001 terrorist attacks was not covered.

- 13 -

an e coli contamination of well water was a "physical loss" under a homeowner's policy. The family alleged they vacated the house because all of them experienced persistent illnesses and skin problems upon moving in. *Id.* at 824. Thus, the facts in *Hardinger* met the test set forth in *Port Authority of New York*, wherein the Third Circuit wrote that invisible damage constitutes physical loss where it renders the building unusable or uninhabitable. 311 F.3d at 236 The same is true of cases where buildings became unusable due to the presence of gas or noxious fumes. *See Essex Ins. Co. v. BloomSouth Flooring Corp.*, 562 F.3d 399 (1st Cir. 2009) (holding that the presence of an unexplained chemical odor sufficiently alleged a physical injury to the insured's building, thus triggering the insurer's duty to defend); *TRAVCO Ins. Co. v. Ward*, 715 F.Supp.2d 699, 707 (E.D.Va. 2010) (holding that a noxious odor emitting from defective drywall constituted a direct physical loss), *aff'd*, 504 Fed. App'x 251 (4th Cir. 2013) *Western Fire Ins. Co. v. First Presbyterian Church*, 437 P.2d 52 (Colo. 1968) (holding that the insured suffered a direct physical loss where gasoline accumulated in the soil under and around the insured's building and gasoline vapors rendered the building uninhabitable). In cases such as these, the condition that caused the loss, though not a visible physical alteration to the covered property, was physically present in the covered building. Instantly, in contrast, the prohibition on in-person dining had nothing to do with any condition, visible or invisible, at the Grant Street Tavern. Rather, the prohibition was meant to

eliminate the possibility of infected patrons spreading an airborne illness to uninfected patrons. As MacMiles alleged: "The coronavirus causing COVID-19 is thought to spread mainly from person to person, primarily through respiratory droplets produced when an infected person coughs or sneezes." Complaint, 9/29/20, at ¶ 9. In previous cases wherein an airborne toxin or odor rendered covered property unusable, the toxin or odor was immanent in the property. It was not an airborne illness that people brought in with them. In a case involving the scope of property insurance coverage, this distinction is critical.[6]

Ultimately, the question before us is not complicated. The provisions of the Policy at issue here cover commercial property. But MacMiles argues, and the trial court found, that "direct physical loss of **or** damage to Covered Property" covers pure economic loss caused by MacMiles' loss of use because of the disjunctive "or" between loss and damage. Policy, Commercial Property Coverage Part, Section I, Coverages/Insuring Agreement (emphasis added). That reading is reasonable if and only if "physical loss" means something distinct from a loss due to a physical alteration or destruction of the property.

---

[6] Much has been made of the observation in Couch on Insurance that "physical alteration" is the most common coverage trigger for a policy insuring against "physical loss or damage" to covered property. COUCH ON INSURANCE, § 148:46 (3d ed. 2000). Because the analysis in § 148:46 neither relied on nor anticipated the present circumstances, we do not find it helpful. In our view, neither side of this debate advances its argument by citing or attacking the conclusions reached in § 148:46.

That is, we must conclude it is reasonable to read the Policy as covering mere loss of use even though the Policy never expressly says so; even though the policy repeatedly uses the word damage; and even though the amount of insurance provision references the time period necessary to "repair, replace, or rebuild" any part of the covered property that had been "damaged or destroyed." These latter terms make sense only in the context of partial physical damage to or total destruction of the covered property. They do not make sense in the context of a purely economic loss. *See e.g.*, ***Dino Drop, Inc. v. Cincinnati Ins. Co.***, 544 F.Supp.3d 789, 798 (E.D.Mich. 2021) (holding that physical loss and damage "can only be reasonably be construed as extending to events that impact the physical premises completely (loss) or partially (damage)."). The trial court's reading of the Policy is strained, and we find that we are constrained to reject that holding.

Further, MacMiles has failed to allege any physical damage. Dine-in service was prohibited, but preparation of meals for takeout or delivery was permitted. Thus, MacMiles' building was not rendered unusable or uninhabitable. And Covid-19, a primarily airborne illness, did no physical damage to MacMiles' covered property. In-person dining was prohibited to prevent infected diners from spreading the virus to others, not because any condition immanent in the Grant Street Tavern rendered the building unusable by diners.

Ultimately, our analysis, aided by persuasive authority from numerous other federal and state jurisdictions, leads us to conclude the trial court erred in finding that MacMiles established a valid claim for coverage under the business income provisions of the Policy. We will therefore reverse the trial court's order granting summary judgment insofar as it granted summary judgment in favor of MacMiles on this issue. Because the pertinent facts are undisputed and the question before us is purely one of law, we direct the trial court to enter an order granting judgment on the pleadings in favor of Erie on this issue.

Next, we consider whether a material issue of fact exists under the civil authority provision of the Policy. Civil Authority coverage is listed under the "Additional Coverages" section of the Policy. It reads in pertinent part as follows:

**1. Civil Authority**

When a peril insured against causes damage to property other than property at the premises described in the "Declarations", we will pay for the actual loss of "income" and/or "rental income" you sustain and necessary "extra expense" caused by action of civil authority that prohibits access to the premises described in the "Declarations" provided that both of the following apply:

a. Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the premises described in the "Declarations" are within that area but are not more than one mile from the damaged property; and

b. The action of civil authority is taken in response to dangerous physical conditions resulting from the damage

> or continuation of the peril insured against that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Policy, Commercial Property Coverage Part, Section I, Income Protection – Coverage 3, ¶ C1.

The trial court concluded that, under the civil authority provision, mere loss of use of a nearby property is not covered. Given that the Civil Authority provision expressly requires damage to a property other than the insured property, a showing of physical damage is required. The trial court found that a question of fact existed as to whether the Covid-19 virus was physically present at a nearby property and that its presence constituted covered physical damage. MacMiles also would have to show that the applicable governor's orders were taken in response to dangerous physical conditions resulting from damage to a nearby property. Trial Court Opinion, 5/25/21, at 18-19. The trial court therefore denied the competing motions on this issue.

Upon review, we conclude that the trial court erred in finding a triable issue of fact. As discussed above, where the alleged property damage is invisible (as is the possible presence of Covid-19 on surfaces), it does not qualify as physical damage for purposes of a commercial property insurance policy. The **Delaware Valley** Court allowed for a possible exception to this rule where the invisible damage renders a building unusable or uninhabitable, but MacMiles has not alleged that any business within a mile of its premises was rendered unusable or uninhabitable by the presence of Covid-19. Thus,

the threshold damage requirement is not met, and MacMiles cannot recover under the civil authority provision of the Policy. The trial court erred in denying Erie's motion for judgment on the pleadings on this issue.

In its second question presented Erie challenges the trial court's finding that the Policy's governmental authority exclusion was inapplicable. Because we have concluded that MacMiles has failed to establish the existence of coverage, we need not assess the applicability of any exclusion.

For the foregoing reasons, we conclude the trial court erred in granting partial summary judgment in favor of MacMiles and in denying Erie's motion for judgment on the pleadings. On the undisputed facts before us, Erie is entitled to judgment on the pleadings in its favor on the coverage issues.

Order reversed. Jurisdiction relinquished.

President Judge Emeritus Bender, Judge Bowes, Judge McLaughlin, and Judge King join the opinion.

Judge Lazarus, Judge Kunselman, and Judge Nichols concur in the result.

President Judge Panella files a concurring statement in which Judge Lazarus, Judge Kunselman, and Judge Nichols join.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  11/30/2022